# UNTIED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| THERESA LAWSON | CIVIL ACTION NO. 16-0414 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LIFEPOINT HOSPITALS, INC. d/b/a MINDEN MEDICAL CENTER | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court are Rule 12(b)(2)[1] and 12(b)(5) Motions to Dismiss filed by Defendant Lifepoint Health, Inc.[2] ("Lifepoint") and a Rule 12(b)(6) Motion filed by Defendant PHC Minden, L.P. d/b/a Minden Medical Center's ("Minden"). See Record Documents 5 and 8. Lifepoint seeks dismissal of Plaintiff Theresa Lawson's ("Lawson") federal civil rights and state law claims on the basis that the Court does not have personal jurisdiction over her claims and that Lawson delivered improper service on Lifepoint.[3] See Record Document 5. Minden seeks dismissal of Lawson's lawsuit because it fails to state a claim upon which relief can be granted. See Record Document 8. For the reasons which follow, Lifepoint's Motion to Dismiss is hereby **GRANTED**. Additionally, Minden's Motion to Dismiss is hereby **GRANTED IN PART** and **DENIED IN PART**.

---

[1] In its Motion to Dismiss, Lifepoint moves the Court to dismiss Lawson's claims pursuant to Rule 12(b)(1); however, Lifepoint later states in its Motion and argues in the Memorandum in Support that the Court lacks personal jurisdiction. Accordingly, the Court will assume Lifepoint meant Rule 12(b)(2) as a ground to dismiss Lawson's lawsuit.

[2] Although named in the Complaint as Lifepoint Hospitals, Inc., the corporation amended its entity name to Lifepoint Health, Inc. in May 2015. See Record Document 5-1 at 1.

[3] Because the Court does not have personal jurisdiction over Lifepoint, we do not reach the issue regarding service.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

Lawson is an African American female who began her employment as a registered nurse with Minden on May 15, 2006, making approximately $24/hour. See Record Document 1 at 4. Most recently, Lawson worked the day shift at Minden. See id. at 5. Lawson received excellent performance evaluations and has letters of recommendation from medical providers lauding her professional competence. See id. From July 2007 through December 2007, Lawson worked full time under a staffing agreement making $34/hour. See id. From January 2008 through May of 2013, Lawson went to a case management position on an as-needed basis with the understanding that the position was temporary. See id. She made $37/hour during this period. See id.

On or about September 6, 2013, Mary Avery, the Staffing Coordinator for Minden, informed Lawson of a full time night shift supervisor position in Case Management and advised her to talk with Case Management Manager, Sheryl Whatley ("Whatley"), a Caucasian. See id. On or about September 9, 2013, Lawson spoke with Whatley and was advised the position was available and that no one else had applied. See id. at 6. On September 11, 2013, Lawson was interviewed for the night supervisor position by Whatley and other case management staff. See id. That same day Whatley informed Lawson that she had not received the position, and that the position was given to Jamie Malone ("Malone"), a Caucasian nurse from intensive care who had no prior case management experience. See id.

Lawson was informed that experience was not considered, and the reason she was not offered the position was because she interviewed poorly, did not have a good explanation for why she wanted the position, and "did not appear excited" about the job.

2

See id. Lawson contends she was enthusiastic and embraced the challenges of the position. See id. During her interview, Lawson was asked questions about how the night shift position would affect her caring for her mother, and whether she was just "swapping one stress for another." See id. Lawson asserts the other nurse, Malone, was not asked the same inappropriate questions. See id. at 7. Lawson later learned from Mary Winget ("Winget"), the Human Resources Director, that she never received a transfer form from Lawson and was not aware she had applied for the position. See id. Winget also told Lawson there had not been an African American night supervisor in over twenty years. See id.

On September 16, 2013, Lawson allegedly filed a complaint of discrimination against her employer with the Louisiana State Board of Nursing. See id. Lawson alleges her staffing agreement was not renewed and her hours began to drop in response to the complaint she filed with the Louisiana State Board of Nursing. See id. This alleged retaliation resulted in Lawson allegedly filing a complaint with the National Association for the Advancement of Colored People ("NAACP") on November 1, 2013. See id. On April 21, 2014, Lawson dual-filed a Charge of Discrimination with the Louisiana Commission on Human Relations ("LCHR") and the Equal Employment Opportunity Commission ("EEOC"), challenging the September 2013 promotion decision. See id.; Record Document 8-2. On June 5, 2015 the LCHR determined there was a sufficient reason to believe a violation of Title VII of the Civil Rights Act of 1964 had occurred. See Record Document 1 at 7. The LCHR unsuccessfully attempted to eliminate the alleged unlawful practices by Minden, resulting in Lawson's constructive discharge. See id.

Lawson filed the instant suit on March 28, 2016, against Lifepoint d/b/a Minden asserting four claims: (1) race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); and (2) race discrimination and retaliation under Louisiana state law, specifically LSA-R.S. 23:301, 23:332, and 23:967. See Record Document 1. Lifepoint and Minden filed Motions to Dismiss. See Record Documents 5 and 8. On June 3, 2016, Lawson responded in opposition to both Motions. See Record Documents 22 and 23. Both Lifepoint and Minden have filed replies to Lawson's response. See Record Documents 26 and 27.

**LAW AND ANALYSIS**

**I.   LEGAL STANDARDS**

**A. Rule 12(b)(2)**

In a federal question case where the federal statute at issue does not authorize nationwide service of process, a court may assert personal jurisdiction to the extent "reached by the long-arm statute of the state in which the district court sits." Point Landing, Inc. v. Omni Capital Intern., Ltd., 795 F.2d 415, 427 (5h Cir. 1986). Louisiana's long-arm statute extends jurisdiction to the full limits of the Constitution. See LA. REV. STAT. ANN. § 13:3201(B). Accordingly, the sole issue here is whether exercising in personam jurisdiction over the nonresident defendants comports with federal due process.

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend

'traditional notions of fair play and substantial justice.'" Moncrief Oil Intern., Inc. v. OAO Gazprom, 481 F.3d 309, 311 (5th Cir. 2007).

The "minimum contacts" prong divides contacts into those that give rise to general jurisdiction and those that give rise to specific jurisdiction. See Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 343 (5th Cir. 2004). General jurisdiction may be exercised when a defendant's contacts with the forum state are "continuous and systematic," regardless of whether the action is related to the forum contacts. See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271(5th Cir. 2006). Specific jurisdiction applies where the non-resident defendant has relatively few contacts with the forum state, but the suit arises out of or is related to the defendant's contacts with the forum. See id. "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants [sic] contacts with the forum state." Freudensprung, 379 F.3d at 343.

Finally, when the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, plaintiff need only make a *prima facie* showing of the jurisdictional facts. See id. All uncontroverted allegations in the complaint are taken as true and fact conflicts are resolved in the plaintiff's favor. See Lewis v. Fresne, 252 F.3d 352, 356 (5th Cir. 2001). However, the court is not required to credit conclusory allegations, even if uncontroverted. See Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001).

## B. Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) changed from the old, more plaintiff-friendly "no set of facts" standard to a "plausibility" standard found in Bell Atlantic v. Twombly and its progeny. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-556, 127 S.Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, Texas, 981 F.2d 237, 243 (5th Cir. 1993). Courts must also accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-679, 129 S.Ct. at 1949-1950. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum

expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S.Ct. at 1966.

## II. ANALYSIS

### A. Lifepoint's Rule 12(b)(2) Motion

Lifepoint clarifies in its Memorandum in support that it does not employ Lawson, and that Minden is an assumed d/b/a of PHC-Minden, L.P., a separate and independent entity of Lifepoint. See Record Document 5-1 at 1. Lawson relies on the parent-subsidiary relationship between Lifepoint and Minden for her assertion that Lifepoint has sufficient minimum contacts for this Court to exercise personal jurisdiction. See Record Document 22 at 4-5. "Lifepoint …through its subsidiaries, operates more than 60 hospital campuses in 21 states." Id. at 3. Lawson cites Lifepoint's 2013 Annual Report which states it has five locations in Louisiana, of which "Lifepoint, or its subsidiaries" own four properties and lease the fifth. See id. Lawson also asserts the use of "we" throughout the Annual Report as evidence of Lifepoint's contacts with Louisiana. See id. Lawson then points to other subsidiaries Lifepoint owns in Louisiana as evidence that it has sufficient contacts. See id. at 4. In its reply, Lifepoint contends the parent-subsidiary relationship is not enough to subject Lifepoint to the personal jurisdiction of this Court because Lawson cannot prove that Lifepoint is a mere alter ego for Minden. See Record Document 26 at 1.

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir. 1983). Courts presume corporate separateness, although this presumption may be

7

rebutted by clear evidence of a parent corporation asserting sufficient control over its subsidiary to render the subsidiary its agent or alter ego. See Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999). "The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." Hargrave, 710 F.2d at 1159. The Fifth Circuit has set forth several factors, known as the Hargrave factors, to be utilized in determining whether personal jurisdiction can be exercised over a parent corporation based on the actions of its subsidiary: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether they share officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over its daily operations. See Dickson Marine Inc., 179 F.3d at 339, citing Hargrave, 710 F.2d at 1160.

There is no doubt that Lifepoint owns 100% of Minden: Minden is a wholly-owned subsidiary of a wholly-owned subsidiary of a wholly-owned subsidiary of Lifepoint. See Record Document 19. However, there is nothing in the record speaking to the issues of officers and directors, corporate formalities, accounting separateness, and the degree of control of policy and daily operations. Far more is required for the contacts of Minden to be attributed to Lifepoint within the Fifth Circuit. See Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 219 (5th Cir. 2000) ("We have said . . . that '100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego

8

relationship between two corporations.'"); Gardemal v. Westin Hotel Co., 186 F.3d 588, 594 (5th Cir. 1999) ("[O]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil."); EEOC v. Vicksburg Healthcare, LLC, 2014 U.S. Dist. 132700, *15 (S.D. Miss. 2014) (finding only two of the Hargrave factors (ownership of stock and common headquarters) was not sufficient to establish an alter ego relationship). Lawson's conclusory allegations that Lifepoint "owns" and "operates" Minden fail to establish the documentary proof the Fifth Circuit requires to rebut the presumption of corporate separateness. See Freudensprung, 379 F.3d at 346-47 (affirming district court's grant of motion to dismiss based on lack of jurisdiction in part because website printouts of SEC filings were insufficient to overcome presumption and thus plaintiff failed to adduce any evidence on the Hargrave factors).

For these reasons, Lawson has failed to controvert Lifepoint's assertions on jurisdictional facts and failed to establish the applicability of the Hargrave factors. Therefore, exercising personal jurisdiction over Lifepoint would be improper, and the Court must dismiss it from this case. The arguments regarding service will thus not be addressed as they pertain to Lifepoint.

### B. Minden's Rule 12(b)(6) Motion

#### i. The Complaint is Not a Shotgun Pleading

Minden first argues Lawson's Complaint should be dismissed entirely because it is a "shotgun pleading." See Record Document 8-1 at 3. A "shotgun pleading" is "one that sets forth an excessive number of facts and then asserts in a conclusory fashion that each of those facts supports a number of legal claims, with the result that each count is

replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." Martin v. Tesoro Corp., 2012 U.S. Dist. LEXIS 71392, *7 (W.D. La. 2012). Lawson simply asserts the Complaint sets forth facts relevant and material to prove the elements of each of her claims. See Record Document 23-1 at 5.

Minden cites Rodgers v. Raycom Media, Inc., 2014 U.S. Dist. LEXIS 126337 (W.D. La. 2014), in support of their "shotgun pleading" claim, but Lawson's Complaint falls far short in comparison. In Rodgers, the plaintiff filed a forty-two page "autobiography" asserting fourteen claims against each of the nine named defendants. See id. at *3. Lawson's Complaint, in comparison, is twelve pages long asserting four claims against a single defendant.[4] See Record Document 1. The Complaint did not require Minden to "fish a gold coin from a bucket of mud," as Minden had no difficulty in distinguishing the separate causes of action. See Record Document 8-1 at 2; Rodgers, 2014 U.S. Dist. LEXIS at *10. There is nothing hidden away from anyone. The facts relate to Lawson's qualifications, and the representations and actions taken by Minden. Therefore, Minden's Rule 12(b)(6) Motion to Dismiss on this ground is denied.

### ii. Lawson's State Law Claims

Minden asserts Lawson's state law claims are time barred because they involve conduct that occurred more than one year before she filed this lawsuit. See Record Document 8-1 at 6. Lawson contends her claims are not bound by the one-year time period because they involved continuing adverse acts. See Record Document 23-1 at 5. Minden correctly shows Lawson's argument fails for two reasons: (1) the alleged adverse

---

[4] Lawson initially filed her suit against Lifepoint d/b/a Minden. It has since been proven that Minden is a wholly-owned subsidiary of Lifepoint; therefore, Lawson really alleged four claims against two defendants.

employment actions were discrete acts, rather than continuous; and (2) not one alleged adverse action occurred within the statute of limitations. See Record Document 27 at 2.

Claims brought under the Louisiana Employment Discrimination Law, LSA-R.S. 23:2301, *et seq.*, are subject to a one-year statute of limitations. See Johnson v. Hosp. Corp. of Am., 2009 U.S. Dist. LEXIS 103079, *33 (W.D. La. 2009). Lawson relies upon the continuing tort doctrine to argue her claims have not prescribed. "A continuing tort exists where a defendant's damaging conduct is a continuing act and gives rise to successive damages from day to day." Coulon v. Witco Corp., 03-208 (La. App. 5 Cir. 5/28/03), 848 So.2d 135, 137. As a result, prescription does not commence to run until the continuing cause of the damage stops. See id. Therefore, Lawson asserts prescription did not run until the date of her constructive discharge, a date Lawson has yet to disclose. However, the continuing tort doctrine is inapplicable here because Lawson has alleged discrete, non-continuing, acts of discrimination and retaliation.

The adverse actions pled in the Complaint were: (1) the denial of a promotion; (2) the non-renewal of her staffing agreement; and (3) a constructive discharge. Lawson's only argument is the acts by Minden "prevent[ed] and prohibit[ed] Lawson from periodically obtaining adequate hours and wages" which qualify as "continuous incidents and prevent the running of prescription." Record Document 23-1 at 5. Lawson fails to cite, and the Court cannot find, any legal authority to support her argument. As Minden successfully states, to rely upon the continuing violation doctrine, Lawson had to have asserted that she was "subjected to ongoing harassment, that is continual, and a permanent condition of the workplace." King v. Phelps Dunbar, LLP, 743 So.2d 181, 188 (La. 1999). Lawson does not allege a hostile work environment, nor does she plead any

11

facts to suggest "ongoing harassment" or any other kind of "continuous conduct." See id. Thus, the continuing tort doctrine does not save her untimely claims. See Huckabay v. Moore, 142 F.3d 233, 239-40 (5th Cir. 1998) (holding the plaintiff's hostile work environment claim was subject to the continuing tort doctrine, but the demotion and failure-to-promote claims were not because they were discrete adverse actions).

Minden also correctly argues that dismissal is warranted because a "prerequisite for invoking the continuing tort doctrine is the occurrence of at least one act of tortious conduct within the [statute of limitations]." Bustamento v. Tucker, 607 So.2d 532, 539 (La. 1992). Here, none of the discrete acts of discrimination alleged in the Complaint fall within the statute of limitations. All actions occurred before March 28, 2015, which is one year prior to the date Lawson filed her Complaint. See Record Document 1 at 5-6.[5] Because Lawson cannot rely upon the continuing tort doctrine to save her untimely state law claims, they are prescribed and must be dismissed.

### iii.    Lawson's Federal Law Claims

Minden states Lawson's Title VII claims, with the exception of her failure-to-promote race discrimination claim, must be dismissed because she did not administratively exhaust them through the EEOC. See Record Document 8. Lawson argues she did exhaust the administrative remedies since her race claims could reasonably be expected to grow out of and were within the scope of the charges of discrimination. See Record Document 23-1 at 5. Lawson's argument, however, is unsuccessful.

---

[5] As mentioned earlier, Lawson does not state when she left her employment at Minden. Since no date is given, the Court cannot determine whether an alleged adverse action occurred within the statute of limitations.

A plaintiff must exhaust her administrative remedies before she may pursue employment discrimination claims in federal court. Clarence Cargo v. Kan. City S. Ry. Co., 2010 U.S. Dist. LEXIS 71417, *5 (W.D. La. 2010), citing Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). A Title VII suit may "extend as far as, but not further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." Simmons–Myers v. Caesars Entm't Corp., 515 Fed.Appx. 269, 272 (5th Cir. 2013), quoting Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993). In other words, the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. Isaac v. Wal-Mart Stores, Inc., 2016 U.S. Dist. LEXIS 56114, at *11 (E.D. La. 2016). "A discriminatory act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." Fine, 995 F.2d at 578.

Lawson's entire narrative in her Charge reads as follows:

I began my employment with the Respondent on May 15, 2006 as a Nurse. The Respondent employs over 20 employees. On September 11, 2013, I was not considered for a promotion.

On September 9, 2013, Cheryl Watley, White, Case Manager, confirmed that a Night Shift Supervisor position was available, which I subsequently applied for. On September 11, 2013, I was interviewed by Ms. Watley and case management staff for the Night Shift Supervisor position. The same day, I was informed by Ms. Whatley, that I was not hired for the position. However, Jamie Malone, White, Nurse, with no prior case management experience received the job.

I believe I have been discriminated against based on my race, Black, in violation of LSA R.S. 3: 301 et seq and Title VII of the Civil Rights Act of 1964, as amended respectively.

See Record Document 8-2. Lawson proceeded to check off the boxes labeled "race" and "retaliation." See id. In her Opposition, Lawson again does not cite any legal authority but states:

> Race discrimination and retaliation for reporting alleged illegal acts of the employer or for refusing to participate therein or abide thereby are not necessarily based on the same type of discrimination but in this instance there was most certainly a factual relationship between the act or acts described in the charge and considered by the EEOC.

Record Document 23-1 at 5-6. However, Lawson incorrectly assumes the factual relationship between the failure-to-promote claim alleged in the Charge and the other claims alleged in the lawsuit. Though Lawson checked the "retaliation" box on her Charge, it does not satisfy the requirement of administrative exhaustion because she did not identify any facts, particularly the alleged protected activity, supporting her claim.

Minden points the Court to its ruling in Givs v. City of Eunice, 512 F.Supp. 2d 522, 536-37 (W.D. La. 2007), to support its argument. See Record Document 8-1 at 7. In Givs, the plaintiff alleged in his EEOC charge that he was denied a promotion and subsequently terminated because of his race. See Givs, 512 F.Supp. 2d at 532-33. The plaintiff filed suit alleging race discrimination and retaliation. See id. The Givs court held that the plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim even though he checked the "retaliation" box on the EEOC charge. See id. at 537. "The Court does not accept that merely checking the retaliation box is sufficient ... [p]laintiff's failure to allege any facts concerning retaliation or harassment that would have put the EEOC on notice about the possibility of such, are fatal to these claims." Id. Likewise, Lawson's failure to allege any facts concerning Minden's retaliation or her constructive discharge is fatal to her claims. She does not suggest anywhere in her Charge that she

engaged in protected activity, that her staffing agreement was not renewed, or that she was constructively discharged. Put simply, there are no facts in her EEOC Charge to suggest a claim of retaliation or other claims of discrimination.

It is clear from the facts of Lawson's EEOC Charge that she was challenging only the denial of a promotion in September 2013. Therefore, only Lawson's failure-to-promote discrimination claim has been administratively exhausted. Accordingly, Lawson's Title VII retaliation claim must be dismissed.

## CONCLUSION

The Court finds the granting of Lifepoint's Motion to Dismiss under Rule 12(b)(2) appropriate because Lawson fails to rebut by clear evidence the presumption of corporate separateness required to render a parent corporation (Lifepoint) subject to the jurisdiction of a forum state merely because its subsidiary (Minden) is present or doing business there. Accordingly, Lifepoint's Motion to Dismiss is **GRANTED** and Lawson's claims against Lifepoint are **DISMISSED**.

Lawson's state law claims consist of discrete adverse employment actions that occurred before March 28, 2015. Thus, the one-year statute of limitations period under La. R.S. 23:301, *et seq.*, precludes her from bringing her state law claims. The Court must also dismiss Lawson's Title VII retaliation claim for failing to exhaust her administrative remedies. Lawson may proceed with her Title VII failure-to-promote race discrimination claim. Accordingly, Minden's Motion to Dismiss is **GRANTED IN PART** and **DISMISSED IN PART**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this the 29th day of September, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE