# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| THERESA LAWSON | CIVIL ACTION NO. 16-0414 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PHC MINDEN, L.P. d/b/a MINDEN MEDICAL CENTER | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 42) filed by Defendant PHC Minden, L.P. d/b/a Minden Medical Center ("MMC"). MMC seeks dismissal of Plaintiff Theresa Lawson's ("Lawson") sole claim that she was not promoted to a full-time Case Manager position because of her race. See id. MMC argues it had a legitimate, non-discriminatory reason for its decision and Lawson cannot prove pretext. See id. Lawson opposes the motion and maintains that she has met her burden as to pretext because she was clearly more qualified than the candidate that was selected and she has evidence of racial discrimination. See Record Documents 53 & 61. For the reasons set forth below, the MMC's Motion for Summary Judgment is **GRANTED** and Lawson's Title VII racial discrimination claim is **DISMISSED WITH PREJUDICE**.

## FACTUAL AND PROCEDURAL BACKGROUND

MMC is a 161-bed acute care hospital located in Minden, Louisiana. See Record Document 42-2 at ¶ A(1); Record Document 53-2 at ¶ A(1). It serves a population of more than 70,000. See id. More than 1,800 people each month seek emergency care in its emergency facility alone. See id. Other services include oncology, rehabilitation (both inpatient and outpatient), diagnostic imaging, intensive care, home health, a Breast Care Center, and the Heart Center of Minden. See id.

MMC hired Lawson, an African American, as a Registered Nurse ("RN") in the position of a staff floor nurse on July 20, 2003. See Record Document 42-2 at ¶ B(2); Record Document 53-2 at ¶ B(2). Lawson's job at MMC was her first "real job" after graduating Grambling State University in 2002 with a Bachelor of Science degree in Nursing. Id. at ¶ B(3); Record Document 53-3 at ¶ B(3). Lawson worked at MMC continuously from July 2003 through November 2014, whether in a full-time, part-time or contract capacity. More specifically, she worked at MMC from July 20, 2003 to July 9, 2004 on a full-time basis and then changed to PRN status (as needed). See id. Lawson began working as a RN for Community Specialty Hospital ("CSH") while continuing to work PRN at MMC. See id. Lawson continued to work at CSH until it closed in 2007. See id. at ¶ B(4); Record Document 42-2 at ¶ B(4).

In 2007, Lawson again began working exclusively for MMC. See id. She worked under a Staffing Agreement until May 21, 2013. See id. at ¶ B(5); Record Document 53-2 at ¶ B(5). During this time, Lawson worked in the Med-Surgery Unit ("Med-Surg") on the night shift. See id. at ¶ B(6); Record Document 53-2 at ¶ B(6). Lawson enjoyed the nursing responsibilities and taking care of patients, but admitted she felt overwhelmed at times due to nursing staff turnover. See id. at ¶ B(7); Record Document 53-2 at ¶ B(7).

During the time period of 2008-2011, Lawson cross-trained as a relief Case Manager on the night shift. See id. at ¶ B(8); Record Document 53-2 at ¶ B(8). The number of relief shifts worked by Lawson is disputed. MMC contends Lawson worked a total of 23 shifts as a Case Manager. See Record Document 42-2 at ¶ B(9). Lawson maintains that she worked more than 23 shifts. See Record Document 53-3 at ¶ B(9). Lawson admitted that she felt stressed and/or overwhelmed from time to time when she

worked as a Case Manager. See Record Document 42-2 at ¶ B(10); Record Document 53-2 at ¶ B(10).

In June 2013, MMC stopped using Staffing Agreements for its PRN nurses. See id. at ¶ B(11); Record Document 53-2 at ¶ B(11). MMC offered Lawson a full-time position as an RN in Med-Surg on the 2nd shift and she accepted the offer. See id. Just two months later, Lawson resigned from working full-time as a RN in Med-Surg and requested to go back to PRN status. See Record Document 42-2 at ¶ C(12); Record Document 53-2 at ¶ C(12). Lawson made this change primarily because it allowed her to work at night, which paid a shift differential, and it was more convenient because it allowed her to take care of her mother. See Record Document 42-2 at ¶ C(13); Record Document 53-2 at ¶ C(13). MMC granted her request. See Record Document 42-2 at ¶ C(14); Record Document 53-2 at ¶ C(14).

Pursuant to MMC's normal process for an employee who resigns a full-time position, Mary Winget ("Winget"), Human Resources Director, conducted an exit interview with Lawson on September 5, 2013. See Record Document 42-2 at ¶ D(15); Record Document 53-2 at ¶ D(15). During the exit interview, Lawson told Winget that she was transferring to PRN status because had to care for her mother, felt stressed at home and at work, and could not commit to a full-time day position. See Record Document 42-2 at ¶ D(16); Record Document 53-2 at ¶ D(16).

On September 6, 2013, after her resignation from a full-time position back to PRN status, Lawson learned of an opening for a full-time Case Manager position on the night shift and applied for the position. See Record Document 42-2 at ¶ E(17); Record Document 53-2 at ¶ E(17). Jamie Malone ("Malone") also applied for the position. See

Record Document 42-2 at ¶ E(18); Record Document 53-2 at ¶ E(18). Malone, a Caucasian, had worked as an RN in the Intensive Care Unit at MMC since October 2008 and had prior supervisory experience, including working as a Charge Nurse for two different hospitals. See Record Document 42-2 at ¶ E(19); Record Document 53-2 at ¶ E(19). While Lawson disputes Malone's prior experience in case management and Malone's qualifications, the summary judgment evidence establishes that both Lawson and Malone met the minimum qualifications for the full-time Case Manager position. See Record Document 42-2 at ¶¶ E(19-20); Record Document 53-2 at ¶¶ E(19-20).

MMC interviewed Lawson and Malone on September 11, 2013. See Record Document 42-2 at ¶ E(21); Record Document 53-2 at ¶ E(21). The interview team consisted of Cheryl Whatley ("Whatley"), the Case Management Manager, and three employees who worked in Case Management, Charlotte Collins, Derek Milwee, and Debbie Madhouse. See Record Document 42-2 at ¶ E(22); Record Document 53-2 at ¶ E(22). The interview team interviewed Lawson first, and then interviewed Malone. See Record Document 42-2 at ¶ E(23); Record Document 53-2 at ¶ E(23). Lawson admitted that she does not know how Malone performed in the interview. See Record Document 42-2 at ¶ E(34); Record Document 53-2 at ¶ E(34).

Whatley called Lawson later that day to inform her that the interview team had made the decision to select Malone as the night shift Case Manager. See Record Document 42-2 at ¶ E(35); Record Document 53-2 at ¶ E(35). Whatley told Lawson that although she thought Lawson may have done a good job, she did not appear enthusiastic or excited about getting the position during the interview. See Record Document 42-2 at ¶ E(36); Record Document 53-2 at ¶ E(36). Lawson did not speak to any of the other

interviewers about why they made the decision to place Malone in the position instead of her. See Record Document 42-2 at ¶ E(37); Record Document 53-2 at ¶ E(37). Lawson does not know why the interview team decided to choose Malone over her and does not know if Malone interviewed better than she did or not. See Record Document 42-2 at ¶ E(39); Record Document 53-2 at ¶ E(39). Lawson does not dispute that the interviewers unanimously believed that Malone interviewed better, appeared to be very excited and wanted the challenge of a new position, and that Lawson did not appear as excited about the opportunity as Malone. See Record Document 42-2 at ¶ E(40); Record Document 53-2 at ¶ E(40).

In a previous Memorandum Ruling, this Court dismissed Lawson's claims against Defendant Lifepoint Health, Inc. See Record Document 28. Lawson's Title VII retaliation claim and her state law claims for race discrimination and retaliation were likewise dismissed. See Record Documents 28-29. Lawson's sole remaining claim is her Title VII failure-to-promote racial discrimination claim. See id. MMC has now moved for dismissal of this remaining claim. See Record Document 42.

**LAW AND ANALYSIS**

I.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine [dispute] of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Id. at 728. During this stage, courts must look to the substantive law underlying the lawsuit in order to identify "which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

"Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). The court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); see also Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). Yet, a nonmovant cannot meet the burden of proving that a genuine dispute of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The court should not, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See Little, 37 F.3d at 1075.

## II. Failure to Promote Race Discrimination Standard.

To establish a *prima facie* case of Title VII racial discrimination involving a failure to promote claim, the plaintiff must prove that: (1) she belongs to a protected group under Title VII; (2) she applied for and was qualified for the position she sought; (3) she was not promoted to the position sought; and (4) her employer promoted an employee to the position sought by the plaintiff who was not a member of the protected class. See McFall v. Gonzales, 143 Fed.Appx. 604, 607 (5th Cir. 2005), citing Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004). "[A] plaintiff must establish all four elements of the case in order to prove that she was treated differently." Id., citing Scales v. Slater, 181 F.3d 703, 709 (5th Cir.1999).

If the plaintiff establishes these requirements, then a presumption of discrimination arises and the defendant must then rebut by articulating a legitimate, nondiscriminatory reason for the employment decision. See Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993). Once the defendant articulates a legitimate, nondiscriminatory reason, "the presumption of . . . discrimination established by the employee's *prima facie* case dissolves." Id. at 957. When the defendant employer has met its burden of production, then "the plaintiff's burden of persuasion then arises and [she] must prove that the proffered reasons are not just pretexts but pretexts for . . . discrimination." Id.

In the pretext stage of the burden-shifting framework, the plaintiff is given a "full and fair opportunity to demonstrate" that the defendant's proffered reason is not true, but instead is a pretext for intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-508, 113 S.Ct. 2742, 2746 (1993). At the summary judgment stage, this means "the plaintiff must substantiate [her] claim of pretext through evidence demonstrating that

discrimination lay at the heart of the employer's decision." Price v. Fed. Exp. Corp., 283 F.3d 715, 720 (5th Cir. 2002). "If the plaintiff can show the employer's asserted justification is false, this showing, coupled with a *prima facie* case, may permit the trier of fact to conclude that the employer discriminated against the plaintiff without additional evidence." Id., citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 2109 (2000). Notwithstanding, even this showing is not always sufficient to prevent summary judgment, as there will be cases where a plaintiff has both established a *prima facie* case and set forth ample evidence to reject the defendant's explanation, yet "no rational factfinder could conclude that the action was discriminatory." Id., citing Reeves, 530 U.S. at 148, 120 S.Ct. at 2109. The decision of whether to grant summary judgment turns on many factors, "including the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." Id., citing Reeves, 530 U.S. at 148-149, 120 S.Ct. at 2109.

### III. Analysis.

Here, MMC concedes that Lawson "can establish a *prima facie* case" of racial discrimination. Record Document 42-1 at 9. Thus, for purposes of the instant Memorandum Ruling, the Court will assume that Lawson has met her *prima facie* case and MMC must rebut Lawson's *prima facie* case by articulating a legitimate, nondiscriminatory reason for not promoting Lawson. MMC has offered competent summary judgment evidence that its decision to promote Malone over Lawson was based on the interview performances of Lawson and Malone, namely the interview team unanimously agreeing

that Malone would do a better job in the position." Record Document 42-3 at 58. Whatley's declaration provides the following information regarding the decision to promote Malone over Lawson:

- Malone was looking forward to the challenge of a new position;

- Malone had prior supervisory experience, was detail oriented and organized, and had a critical care background;

- The interview team agreed that Malone was genuinely excited about the opportunity, whereas Lawson seemed to be entirely motivated by her desire for a lower stress position at night that would be more convenient for her; and

- The interview team was impressed with Malone's enthusiasm and interest in the position and believed that she was genuinely interested in joining the Case Management Department.

Id. Based on the foregoing, this Court holds that MMC has satisfied its burden of presenting a legitimate, nondiscriminatory business reason for promoting Malone in lieu of Lawson. See Mayes v. Office Depot, Inc., 292 F. Supp. 2d 878, 890 (W.D. La. 2003).

Because MMC has offered a nondiscriminatory reason for its promotion decision, the burden shifts back to Lawson to show that MMC's reason is merely a pretext for discrimination. Lawson may demonstrate pretext by "showing that the employer's proffered explanation is false or unworthy of credence." Churchill v. Texas Dep't of Criminal Justice, 539 Fed.Appx. 315, 319 (5th Cir. 2013), *citing* Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Id. "Alternatively, a fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected." Churchill, 539 Fed.Appx. at 319, *citing* EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1444 (5th Cir. 1995) (internal quotations omitted).

Lawson argues that MMC's nondiscriminatory reason was merely pretext for racial discrimination based on the following: (1) Lawson was clearly more qualified than Malone for the Case Manager position; (2) "evidence of racial discrimination"; (3) MMC record keeping - destruction of evidence; (4) failure to produce documents; and (5) the selection committee acted in a completely arbitrary and discriminatory manner. Record Document 53-1 at 14-22; see also Record Document 61. The Court will take each of these arguments in turn.

### A. Clearly More Qualified.

Lawson maintains that she was clearly more qualified than Malone because of her professional education, training, experience and job performance. See Record Document 53-1 at 14. She points to "her formal evaluations, recommendations and other statements and assessments documenting her many years of successful service to MMC." Id. at 15. Lawson notes that she had extensive cross-training, while Malone "had worked in only one unit of the hospital (ICU) since her employment at MMC." Id. Finally, Lawson highlights her "successful work[]" as a relief Case Manager on the night shift. Id.

The Fifth Circuit has held that it is hard to find untruthfulness on the part of the employer when "its judgments on qualifications are somewhere within the realm of reason" Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 282 (5th Cir. 1999). The fact that one candidate has "better education, work experience, and longer tenure with the company do[es] not establish that [she] is clearly better qualified." Price, 283 F.3d at 723. The "clearly better qualified" standard requires "that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in

question." Bright v. GB Bioscience Inc., 305 Fed.Appx. 197, 205 n. 8 (5th Cir. 2008). "In order to establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must 'leap from the record and cry out to all who would listen that [she] was vastly-or even clearly-more qualified for the subject job.'" Price, 283 F.3d at 723.

In Autry v. Fort Bend Indep. Sch. Dist., 704 F.3d 344 (5th Cir. 2013), the plaintiff, an African American male, argued that he was better qualified than the Caucasian female selected for the open position because he had experience working with the employer for two years, a Bachelor's degree, and several years of experience for the open position, unlike the individual that was selected for the position. See id. at 345-346. Baker, the Caucasian female hired for the position, had no formal education beyond high school, no apparent connection to the employer, and had no work experience for the open position. See id. at 346. The employer acknowledged Autry's work experience and educational background, but selected the other candidate based on her qualifications and interview performance. See id. at 347. The Fifth Circuit reasoned:

> Here, though Autry's qualifications are sterling, Autry failed to introduce any evidence shedding light on Baker's credentials or work experience. Indeed, in his deposition, Autry conceded that he had never met Baker, did not know how Baker had performed in her interview, had no idea what Baker's former job as an escrow officer entailed, and had never seen Baker's résumé. . . . Ultimately, the record gives a trier of fact no reasonable basis upon which to compare Autry and Baker's respective qualifications for the support manager position, and Autry's first theory of pretext must therefore fail at the summary judgment stage.

Id. at 347-348.

Here, Lawson admitted that she did not know what Malone's interview entailed, if Malone interviewed better, or what questions the interview committee asked Malone. See

Record Document 42-3 at 99. It is undisputed that Lawson had experience working as a relief Case Manager and Malone did not. Likewise, Lawson held a Bachelor's degree, as compared to Malone's associate degree. Yet, neither Lawson's tenure, educational background, nor her experience establish that she was "clearly more qualified" than Malone, and the Court will not sit as a super-personnel department to review MMC's decision. See Nichols v. Lewis Grocer, 138 F.3d 563, 568-569 (5th Cir. 1998) (holding that losing applicant's longer tenure and more varied work experience with the company did not make her "clearly better qualified" than the winning applicant); Price, 283 F.3d at 723 ("[The plaintiff]'s education, work experience, and longer tenure with the company do not establish that he is clearly better qualified … Although [his] qualifications are sufficient, they do not "leap from the record" when contrasted with [the selected candidate]."); McLendon v. Ingalls Shipbuilding, Inc., 2001 U.S. App. LEXIS 31785, *11 (5th Cir. May 31, 2001) (noting that employment discrimination laws have not "vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom and fairness of the business judgments made by employers" and dismissing the plaintiff's claim because the evidence established only that the employer made a "judgment call" as to who was the better qualified candidate for the position at issue). The summary judgment record does not present a situation where Lawson's qualifications "leap from the record and cry out to all who would listen that [she] was vastly-or even clearly-more qualified for the subject job." Price, 283 F.3d at 723. Lawson's reliance on her subjective belief that she was better qualified than Malone and that discrimination occurred is insufficient to demonstrate pretext. See Price v. Marathon Cheese Corp., 119 F.3d 330, 337 (5th Cir. 1997).

## B. Evidence of Racial Discrimination.

Lawson argues there is evidence of race discrimination in her not being selected for the position, including no other black person in a full-time Case Management Supervisor position; the interview committee was comprised of all whites; no black person(s) in the Case Management department; and the MMC transfer/promotion procedures were not followed in this case. See Record Document 53-1 at 15-16.

The Court holds Lawson's arguments are not sufficient to raise a genuine dispute of material fact as to pretext. Lawson has offered no competent summary judgment evidence to link these pieces of evidence to racial discrimination. Lawson's mere opinion or belief with no supporting evidence is insufficient to support pretext. See Rowe v. Jewell, 88 F.Supp.3d 647, 671 (E.D. La. 2015). As to the lack of African Americans in the Case Management department, the Court finds guidance in Runnels v. Tex. Children's Hosp. Select Plan, 167 Fed.Appx. 377 (5th 2006). In Runnels, eight African-American technicians filed a racial discrimination suit against their employer alleging that they were not promoted for various positions due to their race. See id. at 379-380. In affirming summary judgment in favor of the employer, the Fifth Circuit noted that "the lack of African-American management does not appear to be relevant as to whether management engaged in purposeful discrimination against [the plaintiffs]." Id. at 383. Simply put, the lack of African Americans in the Case Management department at the time Lawson interviewed for the position – without more – is not determinative on the issue of whether MMC's proffered reason for its business decision was pretext.

The same is true as to Lawson's point that the interview committee was comprised of all whites. "It is beyond dispute that the fact that the interviewers were white and

[Lawson] is black does not amount to proof of pretext but is merely [Lawson]'s subjective belief." Calvin v. Mississippi Dep't of Rehab. Servs., No. 3:12CV258TSL, 2013 WL 372332, *2 (S.D. Miss. 2013), *citing* Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 402-03 (5th Cir.2001) (holding that a plaintiff must offer substantial evidence of pretext amounting to more than her subjective belief of discrimination). Likewise, Lawson's argument that MMC's failure to follow transfer/promotion procedures is insufficient to create a genuine dispute of material fact as to pretext. The Fifth Circuit has held repeatedly that "an employer's 'disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual.'" Churchill, 539 Fed.Appx. at 320, *quoting* EEOC v. Tex. Instruments Inc., 100 F.3d 1173, 1182 (5th Cir.1996). Any disregard by MMC of its own promotion or transfer procedures does not prove racial discrimination absent a showing by Lawson that discrimination was a motive in the employment action taken. See id. at 320 n. 4, *quoting* Sanchez v. Tex. Commission Alcoholism, 660 F.2d 658, 662 (5th Cir.1981). Lawson has merely speculated and has presented no evidence that any alleged failure to follow transfer/promotion procedures was motivated by race discrimination. See Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 281 (5th Cir.1999) (Courts must remain cognizant that the ultimate issue is 'whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination."). Lawson has merely speculated and has presented no evidence that MMC's alleged failure to follow procedures was motivated by race discrimination.

### C. MMC Record Keeping - Destruction of Evidence and Failure to Produce Documents.

Lawson notes that "all written evidence of the interview and selection process was knowingly and intentionally destroyed by the MMC Director of Case Management immediately following the interview of the personal selected." Record Document 53-1 at 16. Lawson argues that the spoliation of records has prejudiced her case and is evidence of pretext. See id. at 16-17. She asks that any documents "created" after the interview and selection process by Human Resources Director Winget be excluded from evidence and an adverse inference under Rule 37 be applied. Id. at 17. Lawson further contends that MMC failed to produce documents at Whatley's deposition, namely documents from Lawson's personnel file relating to the selection and interview process. See id. at 18-19.

Whatley stated in her declaration that "if any notes were made by the interview team, they were not kept because we made a decision to select Ms. Malone immediately after the interviews concluded." Record Document 42-3 at 59. Lawson appears to allege that the destruction of any such notes was intentional spoliation and creates an inference of pretext. While the destruction of any such notes may have been in violation of EEOC regulations (see Record Document 53-1 at 16 n. 2), MMC has extensively explained the interview and selection process through the deposition testimony and declaration of Whatley and consideration of any "recreated" document by Winget is simply unnecessary. Additionally, competent summary judgment evidence indicates that the notes were allegedly destroyed immediately after the interviews were completed, not after the filing of

Lawson's employment discrimination claims.[1] Furthermore, in <u>Assariathu v. Lone Star Health Mgmt. Assocs., L.P.</u>, 516 F. App'x 315, 320-321 (5th Cir. 2013), the interviewer's notes were lost and the Fifth Circuit reasoned:

> That [defendants'] choices were arguably wrong or poorly executed does not change our analysis "so long as those decisions are not the result of discrimination." <u>Jackson v. Watkins</u>, 619 F.3d 463, 468 n. 5 (5th Cir.2010) (per curiam). Moreover, [defendants'] alleged "disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual." <u>EEOC v. Tex. Instruments Inc.</u>, 100 F.3d 1173, 1182 (5th Cir.1996) (internal quotation omitted).

<u>Assariathu</u>, 516 Fed.Appx. at 320-321.

Lawson further contends that MMC failed to produce documents in discovery from her personnel file that were relevant to the selection and interview process. Again, it appears Lawson believes this creates an inference of pretext and seeks sanctions under Rule 37. This Court's scheduling order provides the following:

**March 16, 2018      6.      DISCOVERY COMPLETION and DISCOVERY**

---

[1] Lawson asks for an adverse inference under Rule 37 to be applied. See Record Document 53-1 at 17. The doctrine of spoliation allows a jury to draw an adverse inference "that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." <u>Whitt v. Stephens County</u>, 529 F.3d 278, 284-285 (5th Cir.2008). Such inference is predicated on bad conduct of the defendant and the circumstances of the bad act must manifest bad faith. See <u>Vick v. Texas Employment Commission</u>, 514 F.2d 734, 737 (5th Cir. 1975).

"Because the alleged spoliation here occurred before any litigation was filed, [Rule] 37, which is a procedural rule that governs conduct during the pendency of a lawsuit, does not apply." <u>Lopez v. Kempthorne</u>, 684 F.Supp.2d 827, 890 (S.D. Tex. 2010), citing <u>Beil v. Lakewood Engineering and Mfg. Co.</u>, 15 F.3d 546, 552 (6th Cir.1994). Notwithstanding, the Court may rely on its inherent power to impose sanctions. See id., *citing* <u>Duque v. Werner Enterprises, Inc.</u>, Civil Action No. L–05–183, 2007 WL 998156, *2 (S.D.Tex. Mar. 30, 2007) and <u>Toon v. Wackenhut Corrections Corp.</u>, 250 F.3d 950, 952 (5th Cir.2001). However, the Court denies Lawson's request for a Rule 37 adverse inference in this matter because the record simply is devoid of any evidence to support a culpable state of mind in the alleged destruction of the notes.

> **MOTIONS.**
> To allow time for responses, written discovery must be served more than thirty (30) days before the deadline. Motions to compel must be filed by this date.

Record Document 41 at 3. Lawson has to date not filed a motion to compel production of the personnel documents. Moreover, the February 15, 2018 Notice of Deposition issued as to Whatley, which purportedly seeks the production of the documents from MMC, did not allow MMC the required 30 days to respond prior to the closure of discovery on March 16, 2018. See Record Document 65-1 at 5-8. Lawson's arguments as to MMC's destruction of notes and failure to produce documents appear to be her attempt to cast doubt on MMC's articulated reason and are insufficient to meet her burden as to pretext. See Bienkowski v. Am. Airlines, 851 F.2d 1503, 1508 n. 6 (5th Cir.1988) ("But, merely casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent.").

### D. The Selection Committee Acted in a Completely Arbitrary and Discriminatory Manner.

Finally, Lawson argues that the interview committee acted in a completely arbitrary and discriminatory manner because they considered her emotional response and excitement, which she characterizes as entirely subjective, in making the employment decision. See Record Document 53-1 at 19-20. This argument fails to create a genuine dispute of material fact as to pretext. In Manning v. Chevron Chem. Co., LLC, 332 F.3d 874 (5th Cir. 2003), the Fifth Circuit held that "the mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." Id. at 882. Again, Lawson's subjective beliefs and mere opinions with no supporting evidence are insufficient to support pretext. See Rowe, 88 F.Supp.3d at 671.

**CONCLUSION**

Based on the foregoing analysis, this Court finds that Lawson is unable to meet her burden of persuasion and prove that MMC's proffered legitimate, nondiscriminatory reason for its decision to promote Malone over Lawson was a pretext for racial discrimination. Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Record Document 42) filed by MMC is **GRANTED** and Lawson's Title VII racial discrimination claim is **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 10th day of September, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT